### In re DAVIS.

District Court, S. D. New York.
May 14, 1937.

David Haar, of New York City, for objecting creditor.

Etra, Holley & Etra, of New York City (Harry Etra, of New York City, of counsel), for bankrupt.

PATTERSON, District Judge.

A creditor filed specifications in opposition to the bankrupt's application for discharge. The referee to whom the matter was referred reported that the specifications were not established by the proof and recommended that the bankrupt be granted discharge. The objecting creditor filed exceptions to the report.

The bankrupt prior to filing a voluntary petition on June 24, 1936, was a resident fur buyer. He represented a number of retail stores located in other cities and placed their orders with fur manufacturers here. His living came from the commissions which he obtained from the manufacturers on the orders so placed. He maintained an office and employed a stenographer. In his schedules he listed as liabilities only the claim of the objecting creditor at $4,500, and as assets shares of stock worth $29 and a bank balance of $89.

The first specification charges that the bankrupt gave false testimony and made false account in several particulars. At a first meeting of creditors held on July 24, 1936, the bankrupt had testified under oath that from January or February down to his bankruptcy in June he had gone along "without placing any orders." The objecting creditor proved by undisputed evidence in this proceeding that the bankrupt had placed a substantial number of orders with fur manufacturers subsequent to February and prior to June 24th. The bankrupt's attempted explanation of his testimony at the first meeting was that he did not consider an order to be a "placed" order unless he was to receive a commission on it, and that he was not entitled to a commission on any of the orders placed in the period in question. But it is plain that this latter statement was untrue, for the bankrupt admitted later that he got commissions on all orders placed, ranging from 5 per cent. down to one per cent. The testimony that he had placed no orders from January or February down to bankruptcy in June was knowingly false.

The bankrupt had also testified at a first meeting of creditors that he did not "remember" whether he had done any business from January 1, 1936, to June 24, 1936. The fact is that he had done a considerable volume of business, in that he had placed a number of orders involving substantial sums of money during that time. The bankrupt's explanation again is that on orders placed in that period he did not know whether or not he would be allowed commissions, and that he did not consider activity of that sort to be "business." I see no escape from the conclusion that in testifying that he

could not remember whether he had done any business from January 1, 1936, to June 24, 1936, the bankrupt told a deliberate falsehood under oath.

A third feature of the bankrupt's testimony charged to have been false had to do with a check for $200 to the order of "cash," drawn by the bankrupt and bearing the date of May 2, 1936. On May 4, 1936, the bankrupt was served with an order in supplementary proceedings, and the date when the bankrupt drew the check and obtained the money on it was a matter of inquiry. The objecting creditor entertained the view that the bankrupt had drawn the check after being served with the restraining order in supplementary proceedings and had dated the check back to May 2d. When questioned about the check, the bankrupt had testified that he had drawn it on May 2d, had gone to Newman & Axelrod, fur manufacturers, to get it cashed, and had received the cash there on May 2d; that there was "no doubt at all" about the date. The objecting creditor cited that testimony as an instance of false oath sufficient to bar discharge. The weight of evidence in this proceeding established that the bankrupt had antedated the check and that his testimony on the point had been false. It was proved conclusively, by entries in the books of Newman & Axelrod and also by the testimony of the bookkeeper for that concern, that the bankrupt had given the $200 check to Newman & Axelrod on May 5th, that Newman & Axelrod had deposited it in their bank on May 6th, and that they had given the bankrupt the proceeds after the check had cleared, $100 on May 7th and $100 on May 13th. The check was antedated to May 2d in order to circumvent the order served on the bankrupt on May 4th. The bankrupt, after first testifying that he had cashed the check at a saloon on May 2d, went back to his original version that he had cashed it at Newman & Axelrod's place on May 2d. Newman testified to the same story, and the bookkeeper made an effort to soften her original testimony. But these are of no avail against the book entries and the testimony of the bookkeeper given before she realized the import of the facts. The specification of false testimony concerning the check of May 2, 1936, was borne out by the proof.

The fourth specification charged that the bankrupt had failed to explain satisfactorily losses of assets. The objecting creditor proved that between May 9th and June 24th, a period of six weeks before bankruptcy, the bankrupt had received $1,300 in cash. This cash, whether earned or borrowed, was an asset of the bankrupt. When asked what had become of this money, the bankrupt said that he had spent it. When pressed as to how he had spent it, he said that it had been spent for office rent, telephone, telegrams, salary to the stenographer, rent, and living expenses, together with a sum of $112 for expenses of his sister. Yet these items would account for not more than $600, leaving $700 unaccounted for altogether. Of the $1,300 received, $350 was received on June 17th, one week before bankruptcy. The bankrupt was asked what he had done with that $350, and his answer was that he did not know. It was for the bankrupt to explain satisfactorily what had become of the money, and his explanation was wholly unsatisfactory. In re Sperling, 72 F.(2d) 259 (C.C. A.2). The fourth specification was a sound one.

The first and fourth specifications were proved, and the referee should have so found. It is unnecessary to decide whether the other two specifications were also proved. There will be an order denying discharge.